# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**CHARLES A. HOUSE,**

    **Plaintiff,**

  **v.**                                                          Case No. 19-CV-397

**SCOTT N. CLELAND, ANDREW MATSON,
DAVID ARVAI, and BRYANT PETERSON,**

    **Defendants.**

---

## DECISION AND ORDER ON DEFENDANTS'
## MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Charles A. House sues City of Racine Police Officers Scott Keland[1], Andrew Matson, David Arvai, and Bryant Petersen under 42 U.S.C. § 1983. House alleges that the officers violated his rights under the Fourth Amendment when they searched his vehicle, seized his cell phones, and falsely arrested him without probable cause. The defendant officers move for partial summary judgment, moving for dismissal of several of House's constitutional claims. For the reasons explained below, the defendants' motion for partial summary judgment is granted.

## FACTS

As an initial matter, House's response to the defendants' proposed findings of fact fail to comply with Civil L. R. 56(b)(2)(B)(i) (E.D. Wis.). (Pl.'s Resp. to Defs. Proposed Findings of Fact ("DPFOF"), Docket # 51-2.) The Local Rules require the non-movant to reproduce each numbered paragraph in the movant's statement of facts, followed by a

---

[1] House misspells two of the defendant officers' names in his amended complaint. Officer Scott Cleland's name is properly spelled "Keland" (Answer, Docket # 14) and Officer Bryant Peterson's name is properly spelled "Petersen" (Answer, Docket # 13). I will use the correct spellings of the officers' names.

response to each paragraph with specific references to the record. House's responses, however, either give a general objection to a section of the defendants' proposed facts (without tying it to a specific numbered fact) or provide an objection without a proper citation to the record. (*See, e.g.*, *id.* at 7, ¶ 49 where House cites generally to the "Keland Dep.") House also cites to evidence that is not in the record. For example, House cites to the "Matson Dep." at page 88 in support of one of his responses. (*Id.* at 7, ¶ 54.) All House provides in support of his opposition brief, however, are several unauthenticated pages purportedly from two depositions (of Officers Matson and Keland). It is entirely unclear which pages belong to which witness. (Docket # 51-1; Docket # 51-4 through Docket # 51-10.) However, there is no page 88 amongst the pages provided. (*Id.*)

"'[I]t is clear that the decision whether to apply the [local rules] strictly or to overlook any transgression is one left to the district court's discretion.'" *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (quoting *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)). House is represented by counsel in this matter. There is absolutely no excuse for counsel to violate the local rules in this manner. Rather than granting the defendants' motion solely on procedural grounds, however, I will analyze the merits of the motion, making as much sense as I can of House's submissions.

In February 2017, Officer Andrew Matson was employed as an investigator by the Racine Police Department's ("RPD") Special Investigations Unit ("SIU") Drug Enforcement task force. (DPFOF ¶ 8, Docket # 35 and Pl.'s Resp. to DPFOF at 3.) Officer Matson was responsible for patrolling high crime areas and investigating vice-related crimes, including, but not limited to, offenses surrounding the trafficking of illegal drugs, narcotics, gang-related offenses, and weapons. (*Id.* ¶ 9.) Based on Officer Matson's assignment to the

SIU, he was familiar with the area of Eleventh Street and Hilker Place and knew it to be an area for trafficking of controlled substances, robberies, and shootings. (*Id.* ¶¶ 11–12.) Officer Matson was also familiar with House, who was known to traffic controlled substances in the area of Eleventh Street and Hilker Place. (*Id.* ¶ 13.) Officer Matson avers that in his 18-year tenure with the RPD, he personally witnessed House participating in what he believed to be trafficking of illegal narcotics. (Declaration of Andrew Matson ("Matson Decl.") ¶ 5, Docket # 37.)

Sometime prior to February 10, 2017, Officer Matson received information from a confidential informant ("CI") that House, who is known by the alias "Hi-C," was selling heroin from the area of Eleventh Street and Hilker Place. (DPFOF ¶ 16.) Officer Matson avers that he knew the CI to be a reliable source of information as the CI had provided information that contributed to numerous arrests for drug related offenses in the past. (Matson Decl. ¶ 6.) Based on the information from the CI, as well as Officer Matson's knowledge and experience with House and the area of Eleventh Street and Hilker Place, he began investigating House. (DPFOF ¶ 18 and Pl.'s Resp. ¶ 18.) Officer Matson conducted surveillance of House and observed him operating and occupying a 2004 Cadillac Escalade near the area of Eleventh Street and Hilker Place. (*Id.* ¶¶ 19–20.) During this surveillance, Officer Matson observed House having brief contacts with people inside the 2004 Cadillac Escalade. (*Id.* ¶ 21.) Officer Matson knows, based on his training and experience investigating street level drug trafficking, that dealers often have brief contacts with people on the street or in vehicles. (*Id.* ¶ 22.)

During Officer Matson's surveillance, he observed House going from the 2004 Cadillac Escalade to the garbage cans of a residence at the northwest corner of 1020

Eleventh Street. (*Id.* ¶ 23.) Officer Matson observed House take an item out of a garbage can and place it back into the garbage can; based on his observation, Officer Matson did not believe that the items House was handling were actually garbage. (*Id.* ¶¶ 24–25.) Officer Matson knew from his prior experience with House that he had used garbage cans located outside of the residence to stash narcotics. (Matson Decl. ¶ 12.) Officer Matson checked RPD and Department of Transportation records and determined that House lists his residence as 1020 Eleventh Street and the vehicle he was occupying was registered to either House or the residence. (DPFOF ¶ 31.)[2]

During Officer Matson's investigation, he was contacted by the CI who indicated that House was selling drugs at the intersection of Eleventh Street and Hilker Place. (*Id.* ¶ 32.) The CI stated that drug transactions were taking place inside of the vehicle that House was observed occupying. (*Id.* ¶ 33.) The CI also indicated that House was stashing drugs near the garbage cans at the rear of the residence located at 1020 Eleventh Street. (*Id.* ¶ 34.)

On February 10, 2017, Officer Matson was again conducting surveillance in the area of Eleventh Street and Hilker Place when he observed the 2004 Cadillac Escalade parked near the residence located at 1020 Eleventh Street. (*Id*. ¶ 35.) Officer Matson observed House exit the residence through the back door carrying a white box. (*Id.* ¶ 36.) Officer Matson observed House place the white box into the garbage can and retrieve a red box, later identified as a Cheezit Cracker box. (*Id.* ¶ 37.) It appeared to Officer Matson that House had placed something inside the red box and then placed the red box back into the garbage can. (*Id.* ¶ 38.)

---

[2] House disputes this fact, stating that Officer Matson testified that House lives in Milwaukee and that Officer Matson believed that House did not have an expectation of privacy at the Eleventh Street residence. (Pl.'s Resp. to DPFOF at 5, ¶ 3.) However, the deposition pages House cites to in support of this response are not in the record.

4

Officer Matson called RPD officers Keland, Arvai, and Petersen to assist with the investigation. (*Id.* ¶ 40.) Officer Keland was on routine patrol at the time he was contacted by Officer Matson. (*Id.* ¶ 41.) Officer Matson informed Officer Keland that he had received information from a CI that House was trafficking controlled substances in the area of Eleventh Street and Hilker Place. (*Id.* ¶ 42.) Based on prior police contacts, Officer Keland was familiar with House, House's son Jeffrey, and their family being associated with 1020 Eleventh Street. (*Id.* ¶ 43.) Officer Matson also informed Officer Keland of what he observed while surveilling House. (*Id.* ¶ 48.)

Officer Keland contacted Officer Arvai and requested assistance with the House investigation. (*Id.* ¶ 49.) At Officer Matson's request, Officers Arvai, Petersen, and Keland responded to the area of Eleventh Street and Hilker Place to make contact with the suspicious vehicle's occupant. (*Id.* ¶ 50.) At approximately 2:51 p.m., Officer Matson advised that he wanted the suspicious vehicle stopped and the individual inside detained in handcuffs as he believed the person was engaged in illegal narcotics activity. (*Id.* ¶ 53.)

Officer Petersen responded to the scene in his squad car and approached the vehicle. (*Id.* ¶ 54.) Officer Arvai was in front of Officer Petersen in his squad and initiated the stop of House's vehicle. (*Id.* ¶ 55.) Once behind the vehicle, Officer Arvai activated his lights, exited the squad, and approached the vehicle. (*Id.* ¶ 58.) Officer Petersen observed House in the driver's seat talking on a cell phone. (*Id.* ¶ 61.) Officer Arvai opened the driver's door and identified himself as a police officer and spoke to House. (*Id.* ¶ 64.) House stated that he was waiting for a ride to come pick him up. (*Id.* ¶ 65.) Officer Arvai ordered House to exit the vehicle and House complied. (*Id.* ¶ 67.) As House exited the vehicle, Officer Petersen removed the cell phone from House's hand. (*Id.*)

5

A second cell phone was found on House's person and both phones were turned over to Officer Matson. (*Id.* ¶ 68.) House was detained in handcuffs at Officer Matson's request. (*Id.* ¶ 69.) Officer Keland told House that he was not under arrest, but was being detained so Officer Matson could speak with him regarding an investigation. (*Id.* ¶ 70.) House testified that an officer asked whether he could search House and his vehicle and House agreed. (Declaration of Jasmyne M. Baynard ¶ 2, Ex. A, Deposition of Charles House at 14, Docket # 40-1.) Officer Matson arrived on the scene and House was escorted to the back of his squad car for questioning. (DPFOF ¶ 73.) House testified that Officer Matson said that he wanted to search House again, but this time House refused. (House Dep. at 14–16.) Officer Matson ultimately did search House and located $120.00, but no controlled substances. (DPFOF ¶ 76.)

Officer Matson requested that Officer Arvai's police canine conduct an open-air sniff around the vehicle. (*Id.* ¶ 77.) The canine began his open-air sniff at approximately 2:56 p.m. and alerted at the seam between the passenger side front and back doors, indicating the presence of narcotics. (*Id.* ¶¶ 78–80.) Officer Arvai informed Officer Matson of the canine's alert and at Officer Matson's request, Officers Petersen and Arvai searched the inside of House's vehicle and found $1,923.00, two pairs of scissors, and a small piece of tin foil inside the center console. (*Id.* ¶¶ 81–82.) Officer Matson knew from his training and experience that scissors and foil are commonly used in the trafficking of controlled substances, specifically heroin, which is packaged in tin foil for resale purposes. (*Id.* ¶ 85.)

Officer Petersen also searched the breast pocket of a jacket located in the back seat and found a small plastic baggie containing blue pills, which he identified as prescription Viagra. (*Id.* ¶ 83.) House could not provide a prescription for the pills. (*Id.* ¶ 84.)

Officer Matson requested that Officer Keland search the area of the garbage cans outside of the residence located at 1020 Eleventh Street. (*Id.* ¶ 88.) Officer Keland found a sandwich style baggie in a red cardboard box containing a brown powder substance that Officer Keland believed to be heroin. (*Id.* ¶¶ 91–95.) House was arrested and transported to the Racine County Jail. (*Id.* ¶ 99.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a

rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

**ANALYSIS**

House alleges that the defendant officers violated his rights under the Fourth and Fourteenth Amendments by seizing his cell phones and searching his vehicle and garbage cans. (Am. Compl.) House further alleges that he was arrested without probable cause on February 10, 2017, resulting in his imprisonment until March 31, 2017. (*Id.* ¶ 38.) The defendants move for summary judgment dismissing all of House's claims, with the exception of the search of the garbage cans near the house. (Defs.' Br. at 2, Docket # 34.)

House sues the officers pursuant to 42 U.S.C. § 1983. To succeed on a § 1983 claim, House must prove (1) the deprivation of a right secured by the Constitution or federal law and (2) that defendants were acting under color of state law. *Wilson v. Warren Cty., Illinois*, 830 F.3d 464, 468 (7th Cir. 2016). House alleges that the defendant officers violated his rights under the Fourth and Fourteenth Amendments when they allegedly seized his cell phone and searched his vehicle without reasonable suspicion or probable cause and arrested him without probable cause. I will address each claim in turn.

　　1.　　*Seizure of Cell Phones and Search of Vehicle*

House alleges that the defendant officers violated § 1983 by seizing his two cell phones and searching his vehicle without a warrant. (Am. Compl. ¶¶ 14–19.) Pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392

U.S. at 30). The Supreme Court has also recognized an exception to the warrant requirement for seizures of property to allow brief warrantless detentions of personal property on the basis of a "reasonable, articulable suspicion, premised on objective facts, that [said property] contains contraband or evidence of a crime." *United States v. Place*, 462 U.S. 696, 702 (1983). However, "[i]f the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way." *Wardlow*, 528 U.S. at 126. While "reasonable suspicion" is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id.* The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch'" of criminal activity. *Id.* at 123–24 (quoting *Terry*, 392 U.S. at 27).

In determining reasonable suspicion, the Court looks "at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Ultimately, the determination of reasonable suspicion "must be based on commonsense judgments and inferences about human behavior." *Id.* (quoting *Wardlow*, 528 U.S. at 125).

Under the undisputed facts of this case, the defendant officers undoubtedly had reasonable suspicion to conduct a *Terry* stop of House and seize his cell phones. Officer Matson was familiar with House and knew him to traffic controlled substances in the area of Eleventh Street and Hilker Place. (DPFOF ¶ 13.) Officer Matson received information from a CI that House was selling heroin from the area of Eleventh Street and Hilker Place. (*Id.* ¶ 16.) Officer Matson surveilled House and observed him having brief contacts with

people inside of a 2004 Cadillac Escalade near Eleventh Street and Hilker Place, consistent with street level drug trafficking behavior. (*Id.* ¶¶ 19–22.) Officer Matson had prior experience with House using garbage cans outside of a residence to stash narcotics, and observed House take an item out of a garbage can at the residence and place it back into the can. (*Id.* ¶¶ 23–24 and Matson Decl. ¶ 12.)

During the course of his investigation, Officer Matson learned from the CI that House was selling drugs at the intersection of Eleventh Street and Hilker Place, that the drugs transactions were taking place inside of the vehicle that House was observed occupying, and that House was stashing drugs near the garbage cans at the rear of the residence located at 1020 Eleventh Street. (DPFOF ¶¶ 32–34.)

On the day of House's arrest, Officer Matson was surveilling the area of Eleventh Street and Hilker Place when he observed the 2004 Cadillac Escalade parked near the residence located at 1020 Eleventh Street, saw House exit the residence through the back door carrying a white box, saw House place the white box into the garbage can and retrieve a red box, and place something into the red box and place the red box back into the garbage can. (*Id.* ¶¶ 35–38.) Given the facts known to Officer Matson at the time of the *Terry* stop of House, a reasonable officer would have believed criminal activity was afoot.

Officer Matson then called officers Keland, Arvai, and Petersen for backup and informed these officers of what he observed while surveilling House. (*Id.* ¶¶ 40–50.) Officer Matson ordered officers Keland, Arvai, and Petersen to make contact with House. (*Id.* ¶ 53.) House was detained and handcuffed for officer safety (Declaration of Scott Keland ¶ 11, Docket # 36) and placed in the back of Officer Matson's squad car for questioning (*id.* ¶ 12).

10

House was searched and two cell phones were removed from his person. (DPFOF ¶¶ 67–68.)

Approximately five minutes after House was stopped, Officer Arvai's police canine conducted an open-air sniff of the vehicle and positively alerted, indicating the presence of narcotics. (Declaration of David Arvai ¶¶ 5, 9–10, Docket # 38.) "A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 410 (2005); *see also United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008) ("And a police officer's use of a drug-sniffing dog around the exterior of a car is not an illegal search under the Fourth Amendment."). Once the drug dog alerted to the presence of drugs, the defendant officers had probable cause to search the car. *See United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005).

House also challenges the initial seizure of the two cell phones found on his person. Although the defendants state that House alleges his two cell phones were seized and searched (Defs.' Br. at 5), House only complains of the seizure of his two cell phones. Moreover, the record is silent as to whether the phones were searched. Thus, I cannot speak as to the legality of a search, if any occurred, of the cell phones after the initial seizure.

And as to the seizure, again, officers may conduct a brief, warrantless detention of personal property if they have reasonable suspicion that the property contains evidence of a crime. *See Place*, 462 U.S. at 702. For the same reasons the officers had reasonable suspicion to conduct the *Terry* stop, they also had reasonable suspicion to briefly seize House's cell phones as the use of multiple cell phones is often associated with drug trafficking. *See United States v. Paulette*, No. 14-CR-30152-1-NJR, 2015 WL 4624265, at *14 (S.D. Ill. Aug. 3, 2015)

11

("It is well-established that drug traffickers often have more than one cell phone."). Given the undisputed facts before me, the officers' search of the vehicle and seizure of the two cell phones did not violate the Fourth Amendment. House's § 1983 claims as to the warrantless search of the vehicle and seizure of the phones fail and summary judgment is granted to the defendants on these claims.

    2.    *False Arrest Claim*

House also argues that the officers falsely arrested him. To prevail on a constitutional claim for false arrest, House must show that there was no probable cause for his arrest. *See Williams v. City of Chicago*, 733 F.3d 749, 756 (7th Cir. 2013). "Probable cause is an absolute defense to claims of wrongful or false arrest under the Fourth Amendment in section 1983 suits. In other words, if an officer has probable cause to arrest a suspect, the arrest was not false." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (internal citation omitted).

Probable cause exists if "at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Williams*, 733 F.3d at 756 (internal quotation and citation omitted). Whether probable cause exists is "'a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances.'" *Id.* (quoting *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006)). In making this determination, the Court must "'step[ ] into the shoes of a reasonable person in the position of the officer[,]'" *id.* (quoting *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)), "considering the facts known to the officer at the time," *id.* (citing *Carmichael v. Village of Palatine*, 605 F.3d 451, 457 (7th Cir. 2010)). In deciding this question of law as part of a

motion for summary judgment, I must give the non-moving party the benefit of conflicts in the evidence about what the officers actually knew at the time. *Id.*

As stated above, the officers had probable cause to search House's vehicle. During this search, the officers found a large sum of cash and drug paraphernalia (i.e., scissors and a small piece of tin foil) in the vehicle's center console. (Matson Decl. ¶ 25.) Officer Matson knew these items to be used in the packaging and sale of heroin. (*Id.* ¶ 26.) Given the totality of the circumstances known to the officers at the time of House's arrest, the officers had probable cause to arrest House for distributing controlled substances. As such, House's § 1983 claim for false arrest fails as a matter of law.

## CONCLUSION

House alleges that the officers violated his rights under the Fourth Amendment when they searched his vehicle, seized his cell phones, and falsely arrested him without probable cause. On the undisputed facts of this case, these § 1983 claims fail. The defendants' motion for partial summary judgment is granted.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for partial summary judgment (Docket # 33) is **GRANTED**.

The clerk of court will contact the parties to set a status conference regarding scheduling trial of this case as to the plaintiff's remaining claim.

Dated at Milwaukee, Wisconsin this 27th day of April, 2021.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge